UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | No. 6:18-CR-25-CHB-HAI |
| v. | ) ) | RECOMMENDED DISPOSITION |
| DAVID SCOTT GRAY, | ) ) | |
| Defendant. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On October 2, 2018, the Court conducted a competency hearing in this matter, per 18 U.S.C. §§ 4241 and 4247(d).[1]  D.E. 26.  The hearing followed an oral motion for a competency evaluation made by Defendant's attorney at a June 21, 2018 hearing.  D.E. 11.  The Court granted the motion, ordered an evaluation in a custodial setting, and Defendant was remanded to the custody of the United States Marshal.  D.E. 12.  The Court, upon the required findings, ordered the psychiatric or psychological examination pursuant to 18 U.S.C. §§ 4241(b).  D.E. 15.  As a result of this motion, Defendant has not yet had his initial appearance and arraignment on the indictment.

The Court ordered the examination to be performed at the SeaTac Federal Detention Center in Seattle, Washington.  D.E. 15.  All parties had access to the Forensic Report ("the Report") issued by Dr. Cynthia A. Low, Ph.D.  D.E. 22.  In the Report, Dr. Low opined that Defendant is competent for trial purposes.  *Id*. at 15.  After receipt of the Report, the Court set a hearing (D.E. 23), and the parties appeared with counsel (D.E. 26).  During that hearing, the

---

[1] A finding that Defendant is unable to proceed to trial due to mental incompetency could be dispositive of his case. Thus, the Court proceeds via recommended disposition, pursuant to 28 U.S.C. § 636(b)(1)(B)-(C).

parties stipulated to the admissibility of the Report, as well as to the Report's findings. The parties also waived introduction of other proof or argument and waived the right to examine or cross-examine the evaluator.

Section 4241 codifies the competency principles of *Dusky v. United States*, 362 U.S. 402 (1960). Thus, to be competent, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as a factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402; *see also* 18 U.S.C. § 4241(a) (phrasing the test as whether a defendant is "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense"). Section 4247(d) of 18 U.S.C. governs the competency hearing and assures certain trial-type rights. These include the right to confront and cross-examine witnesses, and the right to participate in the hearing. *See* 18 U.S.C. § 4241(c) (referring to the hearing procedures outlined in section 4247(d)).

Ultimately, per section 4241(d) and based on the hearing, a defendant is not competent if, "after the hearing, the court finds by a preponderance of the evidence that the defendant" meets the incompetency definition of section 4241(a). This framework does not dictate which party bears the burden, which has led to disagreements among the Circuits. *See United States v. Carter*, No. 1:12-CR-29, 2013 WL 6668715, at *11 (E.D. Tenn. Dec. 18, 2013) (compiling cases).[2] Here, the proof is not in any way disputed, and the Court need not resolve the burden allocation question. *See Medina v. California*, 505 U.S. 427, 449 (1992) (indicating that

---

[2] The Supreme Court, in dicta, has stated that "Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence." *Cooper v. Oklahoma*, 517 U.S. 348, 362 (1996) (citing 18 U.S.C. § 4241). However, the Sixth Circuit previously stated that "[t]he government must demonstrate by a preponderance of the evidence that defendant is competent to stand trial." *United States v. Chapple*, 47 F.3d 1170 (6th Cir. 1995) (table).

2

argument over burden, in competency context, only matters in "narrow class" of cases where the proof is "in equipoise").

Defendant stipulated as to both the admissibility and the substance of the Report. Accordingly, the only proof concerning Defendant's competency is the expert analysis of Dr. Low. The Report reflects personal observation, a review of Defendant's available medical history and status, sufficient psychological testing, and a thorough assessment of Defendant's abilities in light of the applicable competency standards. The author analyzed Defendant's history, course of evaluation, and testing performance. Dr. Low directly observed Defendant via interviews and subjected him to a battery of psychological testing. D.E. 22. Dr. Low also made contact with defense counsel Christy Love, and received Ms. Love's report regarding Defendant's behavior. *Id*. at 8. The evaluator also secured and reviewed some legal documents, including Defendant's criminal history. *Id*. at 7.

The Report is a thorough and comprehensive assessment of Defendant's mental and psychiatric condition. Notably:

(1) The Report indicates that, although Defendant "was generally a reliable historian . . ., his reported mental health symptoms were questionable and his credibility was not sound in that regard." D.E. 22 at 2.

(2) Defendant has a history of drug use and violence going back to his childhood. *Id*. at 4. "He reported a childhood history of physical and emotional abuse." *Id*. at 9. He "began using marijuana and pills during middle school." *Id*. at 4. He was expelled from ninth grade after he was caught with a knife: "He planned to stab one or two people and a friend reported him." *Id*. He attended alternative school

3

   the following year, but was expelled for planting marijuana. *Id*. He has been mostly incarcerated since age 18. *Id*. at 6.

(3) Defendant has "a significant history of substance abuse." *Id*. at 4. He made his own alcohol in prison and injected it. *Id*. When released, he prefers methamphetamine, which he uses as a medication to make him feel normal. *Id*. Six months of substance abuse classes in prison were "not effective." *Id*. at 5.

(4) Significantly, Defendant "claimed to have a second personality named FTP," FTP being an acronym for "fuck the police." *Id*. at 6. FTP talks to Defendant constantly, and Defendant has difficulty controlling FTP, who "drives" Defendant and "takes over." *Id*. Defendant "blames all of his violent actions on FTP." *Id*. Defendant reports he experiences "blank spots" and he "loses time." *Id*.

(5) During the evaluation, Defendant "was polite and cooperative and exhibited good eye contact." *Id*. at 10. He was oriented to person and place but was unsure whether it was 2017 or 2018. *Id*. "No significant difficulties were observed with attention, concentration, or short-term memory." *Id*. "Despite his reports of auditory hallucinations, no signs of psychosis were ever observed." *Id*. He stated it was difficult to suppress FTP, and "appeared to be exerting much effort to control his anger." *Id*. at 10-11.

(6) On the date of his arrival at SeaTac, July 16, 2018, Defendant initially "denied a mental health history, denied a history of hearing voices, but reported a significant substance abuse history." *Id*. at 9. "Nothing unusual was observed with his mental status." *Id*. Two days later, he "again denied a history of mental health problems or auditory hallucinations, and his mental status was normal." *Id*. Over

    a week later, on July 27, he told evaluators that he had "past diagnoses of Bipolar Disorder, Schizophrenia, and Multiple Personality Disorder since he was a teenager." *Id*. The physician who examined Defendant diagnosed him with "Anxiety Disorder, Essential hypertension, and Gastro-esophageal reflux disease without esophagitis." *Id*. The report notes elsewhere that Defendant "has been tried on many different psychotropic medications beginning in prison in the mid 2000s, but none have worked." *Id*. at 6.

(7) On August 1, 2018, Defendant told a contract psychiatrist he suffered from depression and has "a dude in my head that tells me to do bad things." *Id*. When this person takes over, Defendant "loses time up to several days and cannot recall what happened during that time." *Id*. The contract psychiatrist diagnosed Defendant with "Dissociative and conversion disorder; Major depressive disorder, single episode; and Other stimulant use, with stimulant-induced disorder." *Id*. at 10. Additionally, the psychiatrist "indicated Mr. Gray was difficult to diagnose accurately since he has never been off methamphetamine until five months ago." *Id*.

(7) Various tests were administered, but the results were generally deemed invalid. *Id*. at 11. Defendant was suspected of malingering mental illness. *Id*. The evaluator estimated that Defendant's intellectual functioning was in the "low average range," based on his verbal interactions. *Id*.

(8) The examiner offered the following diagnoses:

- Antisocial Personality Disorder (Primary Diagnosis)
- Malingering

5

- Severe Methamphetamine Use Disorder, In a Controlled Environment

- Moderate Alcohol Use Disorder, In a Controlled Environment

- Mild Cannabis Use Disorder, In a Controlled Environment.

*Id.* at 12. Defendant also appeared to have "severe anger problems, as well as some dysphoria and anxiety," but "these symptoms do not meet criteria for any type of mood disorder." *Id.* at 13.

(9) The evaluator concluded that Defendant was "falsifying symptoms, by claiming he has a second personality who is responsible for all his troubles and violent behavior, and whose voice he hears." *Id.* at 12. In contrast, "No psychotic behaviors or significant impairment in his functioning was ever observed." *Id.*

(10) Concerning court proceedings, Defendant "exhibited an adequate understanding of the criminal charges and the related court proceedings." *Id.* at 13. He also expressed "an average understanding of appropriate courtroom behavior and the challenging of prosecution witnesses." *Id.* at 14. But he had "poor motivation to help himself." *Id.* at 15.

(15) The Report concluded:

> Overall, Mr. Gray demonstrated an adequate ability to understand the nature and consequences of the court proceedings against him, and an adequate ability to properly assist counsel in his defense. From the available information, there is no evidence to indicate the defendant suffers from a mental disorder that would substantially impair his present ability to understand the nature and consequences of the court proceedings brought against him, or to assist in his defense. He is a very cynical and antisocial individual who may volitionally choose not to pay attention to his attorney or to the court proceedings, in an effort to keep his anger reined in. He may also continue to feign psychotic symptoms, memory impairment, and the presence of another personality if he feels it will benefit him.

*Id*.

Dr. Low accurately applied the *Dusky* standard as codified in 18 U.S.C. § 4241(a) to determine that Defendant is competent. D.E. 22 at 15. Dr. Low elicited from Defendant definitions of key terms and participants in a trial, as well as the elements and procedures related to a criminal trial. *Id*. at 13-15. As such, the Report supports a finding that both prongs of the *Dusky* competency test appear to be met in this case, and its conclusions are unrebutted.

Additionally, the Court sought the insight of counsel for the defendant, Hon. Christy J. Love, who had initially requested the competency evaluation. Ms. Love had no evidence to contradict the Report's conclusions. The Court also observed and interacted with Defendant at his competency hearing. Defendant was composed and respectful to the Court throughout the proceedings, and understood their nature. He spoke freely to the Court about the evaluation and agreed that he was competent to proceed.

For the foregoing reasons, the Court finds no evidence which tends to show that Defendant is not competent. That finding, of course, precludes any finding of incompetency by a preponderance of the evidence. Per 18 U.S.C. § 4241(a), Defendant is able to understand the nature and consequences of the proceedings against him and to assist properly in his own defense. Therefore, the undersigned **RECOMMENDS** that the District Judge find that Defendant is competent to face further proceedings, to include trial, in this matter.

The Court issues this Recommended Disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The parties should consult that statute and Federal Rule of Criminal Procedure 59(b) concerning the right to appeal to the District Judge. At the final hearing, the parties agreed to a shortened objections period of three days. Thus, any objection must be filed within **THREE DAYS** of the entry of this order. Failure to object per Rule 59(b) waives a party's right to review. Upon

expiration of that three-day period, this matter will be referred to Judge Boom for her consideration.

    This the 4rd day of October, 2018.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge